**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENCE Z. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 730 MTS |
| | ) | |
| ANN PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the Court on the motion of plaintiff Clarence Z. Howard for leave to commence this civil action without prepayment of the required filing fee. Doc. [5]. Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $12.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. Doc. [9]. The account statement shows an average monthly deposit of $63.50. The Court will therefore assess an initial partial filing fee of $12.70, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint and Subsequent Filings

Plaintiff is a self-represented litigant who is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri. On June 18, 2021, he filed this civil action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was denied a shower for eight days in December 2019.

The complaint names fourteen[1] separate defendants: (1) the Missouri Department of Corrections; (2) Missouri Department of Corrections Director Ann Precythe; (3) Division Director of Adult Institutions Alana Boyles; (4) Division Director of Adult Institutions Jeff Norman;[2] (5) Warden Richard Adams; (6) Lieutenant Unknown Spark; (7) Lieutenant Unknown Word; (8) Sergeant Unknown Njuko; (9) Sergeant Unknown Wisdom; (10) Correctional Officer Unknown Gore; (11) Caseworker Unknown Wilford; (12) Case Manager Unknown Litton; (13) Correctional

---

[1] In the caption of the complaint, plaintiff names only the Missouri Department of Corrections. Meanwhile, in the body of the complaint, plaintiff lists thirteen individuals as defendants, but not the Missouri Department of Corrections. The Court will treat both the Missouri Department of Corrections and the thirteen individuals as the defendants in this action.

[2] The Court notes that in the section of the form complaint for naming "Defendant 2," plaintiff has written "Alana Boyles or Jeff Norman." The Court will treat them as separately-named defendants.

3

Officer Unknown Frayler; and (14) Assistant Warden Diane Sommerly. Doc. [1] at 2-6. Defendants are sued in their individual capacities only.

Attached to the complaint are a number of exhibits, including four informal resolution requests; an offender grievance; an offender grievance response; an offender grievance appeal; a temporary administrative segregation confinement (TASC) property list; an offender kite; a prescription label for plaintiff's triamcinolone ointment; a property pick-up/inventory list; a conduct violation report; a corrective action report; an offender personal property list; and a health services request. Doc. [1-1]. The Court has reviewed these exhibits and will treat them as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

 In his "Statement of Claim," plaintiff asserts that his due process and equal protection rights have been violated by his being deprived "of showers for 8 plus days." Doc. [1] at 7. More precisely, plaintiff states that he was placed in administrative segregation from December 2, 2019 to December 16, 2019, while an inmate at the Missouri Eastern Correctional Center. Doc. [1] at 8. During that time, he claims he was "restricted from showers," but that other offenders – including his cellmate – were allowed to shower. Plaintiff alleges that his inability to shower caused him "physical injury" in that he suffered sores on his arms and legs. He does not explain how the lack of showering caused these sores, other than to say that he kept scratching himself "from bad hygiene." Doc. [1-1] at 1. Plaintiff notes that these sores were bloody, caused irritation, occasionally reopened, and constitute "irreparable harm." Doc. [1] at 10.

None of the fourteen defendants are mentioned in the "Statement of Claim." Instead, plaintiff broadly asserts that "[e]ach defendant didn't care about [his] safety [and] security." Doc. [1] at 8. In the section of the complaint for listing each defendant, however, plaintiff does make a few brief allegations towards some of the individuals.

With regard to Lieutenant Word, plaintiff states that "Word denied medical attention [and] plaintiff['s] shower." Doc. [1] at 4. He states that he asked Lieutenant Word for a shower, that his request was "denied," and that he was denied "medical attention for 10-30 [minutes]." Similarly, plaintiff alleges that Sergeant Wisdom "denied plaintiff [a] shower, because she was the sergeant that gave shower[s] for [the] night (i.e. every other day according to policy)." Doc. [1] at 5. He also states that Officer Frayler "denied plaintiff [a] shower but let" others receive them. Doc. [1] at 6.

As to Sergeant Njuko, plaintiff contends that Njuko denied him his right to due process and equal protection with regard to his TASC property. In the complaint, plaintiff does not say what Sergeant Njuko did or did not do to actually harm him. However, he has attached a property pick-up/inventory list that Njuko appears to have signed. Doc. [1-1] at 11. Plaintiff has marked up this document with marginalia, arrows, and circles. Also attached as an exhibit is an informal resolution request, in which plaintiff explains that Sergeant Njuko packed his property before he went to administrative segregation, and that Njuko did not "follow policy for safety [and] security of [his] property." Doc. [1-1] at 13.

Regarding Officer Gore, plaintiff directs the Court to "look at Exhibit A," which purportedly "explain[s] everything." Doc. [1] at 5. Exhibit A is a TASC property list of allowed personal property items. Doc. [1-1] at 7. It appears to be signed by both Officer Gore and by plaintiff himself. According to the list, plaintiff was allowed to take a toothbrush, toothpaste,

deodorant, and soap with him to administrative segregation. In a handwritten note on the document – apparently written by plaintiff – there is a notation that suggests these items were "missing."

With respect to both Caseworker Wilford and Case Manager Litton, plaintiff refers the Court to Exhibit B for evidence of due process and equal protection violations. Doc. [1] at 5. Exhibit B is a copy of an "offender kite" sent to Litton and Wilford on December 2, 2019, in which plaintiff states that he is missing certain items that were "lost in [his] property when it was packed up by COII Njuko." Doc. [1-1] at 8. The response to the kite – which seems to have been written by plaintiff himself – is that when plaintiff goes to property he "will get it."

Finally, regarding Assistant Warden Sommerly, plaintiff states that Sommerly denied him due process and equal protection when she did not "respond back" to plaintiff's kites. Doc. [1] at 6. Plaintiff does not provide the date he sent the kites or provide any indication that Assistant Sommerly received them.

As a result of not receiving a shower for eight days, plaintiff states that he suffered from sores on his arms and legs, as well as emotional injuries. Doc. [1] at 10. He seeks $5 million in actual damages and $30 million in punitive damages. Doc. [1] at 12.

Along with his complaint, plaintiff also filed a document titled "Motion for Plaintiff['s] Order to Show Cause for [a] Preliminary Injunction," which has been construed as a motion for a preliminary injunction. Doc. [3]. In the motion, plaintiff reasserts that he was deprived "of showers for 8 plus days" and that he suffers from irreparable harm consisting of the sores on his arms and legs. Doc. [3] at 1. He states that this deprivation amounted to a violation of his constitutional rights under the Fourteenth Amendment. Doc. [3] at 2. It is not clear what plaintiff wants enjoined, as there is no indication that he has ever been deprived of a shower outside the eight-day period in

6

December 2019. Instead of enjoining further harm, plaintiff appears to ask for "release" and to be "paid." Doc. [3] at 1.

On June 21, 2021, plaintiff filed a document construed as a motion to supplement his complaint. Doc. [4]. In the motion, plaintiff noted that his complaint had been submitted with a missing page. That page – page eight – was attached to the motion, and plaintiff sought to have it incorporated into the complaint.

On August 13, 2021, plaintiff submitted a second supplement to the complaint, this time in the form of a grievance appeal response. Doc. [7]. The attached grievance appeal response denied plaintiff's appeal because his original informal resolution request was filed over a year after the complained-of events occurred.

On September 9, 2021, plaintiff filed a third supplement to the complaint. Doc. [8]. This supplement consisted of an offender grievance dated August 23, 2021, in which plaintiff complained that his legal mail was being opened without him being present.

### Prior Lawsuit

The Court notes that plaintiff filed a prior lawsuit with similar facts and many of the same defendants on February 23, 2021. *See Howard v. Precythe, et al.*, No. 4:21-cv-233-HEA (E.D. Mo.). In the complaint, plaintiff alleged that he spent eight days in "the hole," from December 2, 2019 to December 10, 2019. During that time, he lacked certain hygiene items that were supposed to be in his TASC property. He also stated that he was denied showers for those eight days.

On May 27, 2021, the Court dismissed plaintiff's complaint without prejudice. The Court noted that – at the time he filed his complaint – he had not exhausted his administrative remedies. The Court also explained that even had he exhausted his administrative remedies, he had failed to state a claim against defendants in either their official or individual capacities.

As to the official capacity claims, the Court observed that such claims were actually against defendants' employer, the State of Missouri. However, a state is not a 42 U.S.C. § 1983 "person" for purposes of a claim for money damages. Moreover, the Eleventh Amendment bars official capacity claims for money damages against a state employee.

With regard to the individual capacity claims, the Court determined that plaintiff had not indicated how any of the defendants deprived him of his constitutional rights. The Court also concluded that plaintiff's purported eight-day delay in taking a shower did not state a constitutional violation.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that he was denied showers for a period of eight days while in administrative segregation. Because plaintiff is proceeding in forma pauperis, his complaint was reviewed under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, this action will be dismissed without prejudice for failure to state a claim.

### A. Missouri Department of Corrections

Plaintiff has named the Missouri Department of Corrections as a defendant. The Department of Corrections is a department of the State of Missouri, meaning that a claim against it is treated as a claim against the state itself. The claim must be dismissed for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*,

8

491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8ᵗʰ Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8ᵗʰ Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

In this case, plaintiff has brought a claim for money damages. As noted above, a state is not a 42 U.S.C. § 1983 "person" for purposes of such a claim. Because plaintiff is missing an essential element of a § 1983 claim, the claim against the Missouri Department of Corrections must be dismissed.

Second, plaintiff's claim against the Missouri Department of Corrections is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8ᵗʰ Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8ᵗʰ Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8ᵗʰ Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8ᵗʰ Cir. 2007) (stating that district court erred in allowing

plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable, because the State of Missouri has not waived its sovereign immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

For these two reasons, plaintiff's claim against the Missouri Department of Corrections must be dismissed.

### B. Individual Capacity Claims Against Defendants Precythe, Boyles, Norman, and Spark

Plaintiff has sued Director Precythe, Division Director Boyles, Division Director Norman, and Lieutenant Spark in their individual capacities only.[3] Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not demonstrated a causal connection between anything done by defendants Precythe, Boyles, Norman, and Spark, and the denial of his constitutional rights. Quite to the contrary, these four persons are not mentioned anywhere in the complaint, save for the section in which they are named as defendants. Simply identifying a person as a defendant is not

---

[3] The Court notes that in plaintiff's form complaint, plaintiff initially checked the boxes indicating that he was suing Precythe, Boyles, and Norman in both their individual *and* official capacities. However, it appears that the check-marks in the official capacity boxes have been scratched out. Given that plaintiff has clearly indicated that the other defendants are sued in their individual capacities only, the Court has treated Precythe, Boyles, and Norman in the same manner. Nevertheless, even if Precythe, Boyles, and Norman had been sued in their official capacities, the official capacity claims would be subject to dismissal. Official capacity claims against individuals are actually treated as being made against the governmental entity that employs them. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (explaining that an official capacity claim against an individual is actually "against the governmental entity itself"). Thus, the claims against these three defendants would be treated as claims against the State of Missouri. As plaintiff is seeking only monetary damages, the claims would fail because a state is not a 42 U.S.C. § 1983 "person," and because the state is immune from suit under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that "neither a State *nor its officials acting in their official capacity* are 'persons' under § 1983") (emphasis added); and *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

enough to assert their responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and *Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in the complaint, and who were not alleged to have been personally involved in the constitutional violations).

The Court observes that plaintiff seems to be asserting liability against Director Precythe, Division Director Boyles, Division Director Norman, and Lieutenant Spark based on their respective positions of authority. However, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Rather, to state a claim against a supervising official, "a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution." *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020). As previously discussed, plaintiff has not presented any facts showing these defendants violated the constitution through their own actions.

For all these reasons, plaintiff has failed to state a claim against defendants Precythe, Boyles, Norman, and Sparks. Therefore, the individual capacity claims against them must be dismissed.

### C. Individual Capacity Claim Against Warden Adams

Plaintiff has sued Warden Adams in his individual capacity. As with defendants Precythe, Boyles, Norman, and Sparks, there are no factual allegations presented against him. It therefore follows that plaintiff has not established a causal connection between Adams's actions and a constitutional violation. *See Mayorga*, 442 F.3d at 1132. Simply naming Adams as a defendant is

not sufficient to state a claim. *See Allen*, 5 F.3d at 1153. Furthermore, Adams's position as warden is also not enough to show that he was personally responsible for harming plaintiff. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (explaining that it is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement").

Having reviewed the exhibits attached to the complaint, the Court observes that plaintiff included a grievance response dated June 9, 2021. The grievance response denied plaintiff's grievance, and was signed by Warden Adams. To the extent that plaintiff is attempting to allege that Warden Adams wronged him by denying his grievance, he fails to state a constitutional violation. That is because a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

For all these reasons, plaintiff has failed to state a claim against Warden Adams. Therefore, the individual capacity claim against him must be dismissed.

**D. Individual Capacity Claim Against Sergeant Njuko**

Plaintiff has sued Sergeant Njuko in an individual capacity, alleging that Njuko violated his rights to due process and equal protection. Plaintiff provides no support for these legal conclusions, and they are not entitled to the presumption of truth. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (stating that a court "need not accept as true a

plaintiff's conclusory allegations or legal conclusions drawn from the facts"). Furthermore, plaintiff makes no effort to explain what Sergeant Njuko did or did not do to harm him. As such, he has failed to establish the necessary causal connection between Sergeant Njuko's actions and a deprivation of plaintiff's constitutional rights. *See Mayorga*, 442 F.3d at 1132.

Attached to the complaint is a property pick-up/inventory list dated December 2, 2019. Doc. [1-1] at 11. According to the list, plaintiff's property was "inventoried by" Sergeant Njuko. A handwritten notation on the top of the list, seemingly made by plaintiff, states that certain items, such as a TV, hygiene products, and legal work, "was destroyed or lost by MODOC officers." Also attached as an exhibit is an informal resolution request, in which plaintiff explains that Sergeant Njuko packed his property before he went to administrative segregation, and that Njuko did not "follow policy for safety [and] security of [his] property." Doc. [1-1] at 13.

To the extent that plaintiff is alleging a constitutional violation due to lost or stolen property – based on the attached exhibits – he has failed to state a claim. "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Missouri provides such an adequate postdeprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin. *See* RSMo § 99.01. *See also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under

Missouri law). In other words, even if Sergeant Njuko did not "follow policy for safety [and] security of [his] property," plaintiff's property claim is not actionable under 42 U.S.C. § 1983.

To the extent that plaintiff is asserting that the lack of these property items led to other harms while he was in administrative segregation, there are simply no facts to support this proposition, much less that Sergeant Njuko is responsible. Simply put, plaintiff has not factually alleged that Sergeant Njuko did anything wrong, and has certainly failed to connect Njuko's actions to a constitutional violation. Indeed, as previously noted, there is nothing about Sergeant Njuko in the complaint, other than his name and the conclusion that he violated plaintiff's due process and equal protection rights. This does not comply with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(2) (providing that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

The exhibits plaintiff has attached likewise fail to state a claim. While the inventory list shows that Sergeant Njuko inventoried plaintiff's property, it does not show that Njuko was responsible for items that later went missing or were destroyed. Additionally, while plaintiff mentions in his informal resolution request that Sergeant Njuko did not "follow policy," he does not describe what policy he is referring to, adduce any facts that show a violation of said policy, or demonstrate that he was harmed.

For all these reasons, plaintiff has failed to state a claim against Sergeant Njuko. Therefore, the individual capacity claim against Njuko must be dismissed.

### E. Individual Capacity Claim Against Officer Gore

Plaintiff has sued Officer Gore in an individual capacity, asserting that Gore violated his right to due process and equal protection. As with Sergeant Njuko, plaintiff does not present any

factual allegations in support of his claim. Instead, he refers the Court to Exhibit A, which he states will "explain everything."

Referencing an exhibit is not sufficient, in and of itself, to state a claim. Rather, to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Such a short and plain statement is missing here. As such, his claim is subject to dismissal for failure to comply with the Federal Rules of Civil Procedure. *See Micklus v. Greer*, 705 F.2d 314, 317 n.3 (8th Cir. 1983); and *Cody v. Loen*, 468 Fed. Appx. 644, 645 (8th Cir. 2012) (stating that a pro se litigant is not excused from Fed. R. Civ. P. 8, "which requires a short and plain statement showing the pleader is entitled to relief").

Leaving that aside, plaintiff's Exhibit A does not actually "explain everything." The exhibit is a TASC property list dated December 2, 2019, when plaintiff went into administrative segregation. The inventory list shows what items plaintiff was allowed to take, or was given. The inventory was apparently done by Officer Gore, and plaintiff signed the list. A handwritten annotation – presumably made by plaintiff at a later date – indicates that he was missing his toothbrush, soap, deodorant, washcloth, and laundry bag. Also missing is any indication that Officer Gore engaged in misconduct that deprived plaintiff of a constitutional right. While the Court can infer that Officer Gore took part in inventorying the TASC property, there is nothing to indicate that Gore did anything wrong. There are no allegations, for instance, that Officer Gore took the "missing" items or otherwise denied plaintiff access to them.

For these reasons, plaintiff has failed to state a claim against Officer Gore. Therefore, the individual capacity claim against Gore must be dismissed.

**F.  Individual Capacity Claims Against Caseworker Wilford and Case Manager Litton**

Plaintiff has sued Caseworker Wilford and Case Manager Litton in their individual capacities, alleging violations of his right to due process and equal protection. As with Sergeant Njuko and Officer Gore, plaintiff presents no factual allegations against them, nor does he identify them within the "Statement of Claim." Instead, plaintiff refers the Court to Exhibit B, which is attached to the complaint.

As previously discussed, simply referencing an exhibit is not sufficient to state a claim under the Federal Rules of Civil Procedure. Rather, to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Plaintiff has not provided such a statement as to either Caseworker Wilford or Case Manager Litton. As such, his claims against them are subject to dismissal. *See Micklus*, 705 F.2d at 317 n.3; and *Cody*, 468 Fed. Appx. at 645 (stating that a pro se litigant is not excused from Fed. R. Civ. P. 8, "which requires a short and plain statement showing the pleader is entitled to relief").

Even if it were possible to state a claim by mere reference to an exhibit, plaintiff's Exhibit B does not show that Caseworker Wilford and Case Manager Litton violated his constitutional rights. Exhibit B consists of an "Offender Kite," purportedly sent by plaintiff to Wilford and Litton on December 2, 2019. In the kite, plaintiff requests several items, including a toothbrush, toothpaste, face towel, gray pants, white shirts, socks, legal work, soap, and a blanket. He asserts that these items were "lost in [his] property when it was packed up by COII Njuko." Plaintiff's kite requests that Wilford and Litton "inventory [his] thing[s] again." The kite contains an annotation – clearly added for purposes of this case – that he requested these items so that he could take a shower.

Accepting everything in the exhibit as true still does not state a claim against either Caseworker Wilford or Case Manager Litton. There are no allegations demonstrating that either defendant was responsible for inventorying his property, or even that they received the kite. More pertinently, there are no facts showing that the failure of Wilford and Litton to "inventory [his] thing[s]" – which is what plaintiff requested in the kite – led to a constitutional violation. That is, plaintiff has not supported a deliberate indifference claim because he has not shown that Wilford and Litton "knew of and disregarded" a "substantial risk of harm," or that they recklessly disregarded any risk. *See Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008).

For all these reasons, plaintiff has failed to state a claim against Caseworker Wilford and Case Manager Litton. Therefore, the individual capacity claims against them must be dismissed.

### G.  Individual Capacity Claim Against Assistant Warden Sommerly

Plaintiff has sued Assistant Warden Sommerly in her individual capacity, alleging that she violated his due process and equal protection rights. To support this proposition, he states only that "while he was in the hole [he] sent her kites" asking why he did not receive a shower, but that Assistant Warden Sommerly did not "respond back at all."

The assertion that Assistant Warden Sommerly violated plaintiff's due process and equal protection rights amounts to a legal conclusion, which the Court is not required to accept as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Meanwhile, the vague assertion that plaintiff sent Assistant Warden Sommerly "kites" and that she did not respond is insufficient to demonstrate a connection between Sommerly's actions and the deprivation of plaintiff's rights. *See Mayorga*, 442 F.3d at 1132. Specifically, plaintiff provides no

18

facts as to when he sent the kites, the precise contents of the kites, whether Sommerly received the kites, and whether it was her responsibility to respond to this type of inmate complaint. Without additional facts, plaintiff has not demonstrated Sommerly's deliberate indifference, which requires her to know of and disregard a "substantial risk of harm" to plaintiff. *See Brown*, 518 F.3d at 558.

For these reasons, plaintiff has failed to state a claim against Assistant Warden Sommerly. Therefore, the individual capacity claim against her must be dismissed.

### H.  Individual Capacity Claim Against Lieutenant Word

Plaintiff has sued Lieutenant Word in an individual capacity, alleging that Word denied him medical attention and denied him a shower.

### i.    Medical Care

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). A plaintiff attempting to claim deliberate indifference must establish both the objective and subjective components. *See Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference

can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). *See also Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624 (8th Cir. 2021).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). *See also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health"). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff states only that "Lieutenant Word denied medical attention…for 10-30 [minutes]." In an attached informal resolution request, he further asserts that he had "an anxiety attack," consisting of shortness of breath, on December 1, 2019. Doc. [1-1] at 15. Plaintiff alleges that he pressed "the emergency button," but that Lieutenant Word "did not get medical to [his] cell for about 10 to 30 minute[s]." He also blames an unnamed Corizon nurse for "waiting 10 to 30 minute[s] to come and see [him]."

This is insufficient to state a deliberate indifference claim. Even assuming that plaintiff's "anxiety attack" constituted a serious medical need, plaintiff has not presented sufficient facts to show that Lieutenant Word's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Particularly, plaintiff presents no facts establishing that the ten-to-thirty minute delay was a deliberate or intentional act by Lieutenant

20

Word, that the delay caused him any harm, or even that the delay was Lieutenant Word's fault. Indeed, in the same informal resolution request, he blames the nurse for the delay. Based on these facts, plaintiff has not shown that Lieutenant Word was deliberately indifferent to his medical needs.

### ii.     Denial of a Shower

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (stating that "[t]he Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes"). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). This means that prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). An inmate's basic human necessities includes the right to adequate personal hygiene. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under 42 U.S.C. § 1983).

In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference." *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir.

2016). A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644.

Furthermore, in determining whether the denial of hygiene violates the Eighth Amendment, courts must look to the length of time over which the deprivation occurred. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (explaining that the long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates). To that end, a short delay in taking a shower does not violate the constitution. *See Scott v. Carpenter*, 24 Fed. Appx. 645, 647-48 (8th Cir. 2001) (determining that there was no denial of plaintiff's "minimal civilized measure of life's necessities" when plaintiff was able to shower only fifteen times in six months, including a twenty-eight-day period without a shower).

In this case, the entirety of plaintiff's accusation against Lieutenant Word consists of the statement that he asked "Word for a shower [and] was denied." This is not sufficient to connect Lieutenant Word to a constitutional violation. That is, plaintiff does not establish how Lieutenant Word's actions deprived him "of the minimal civilized measure of life's necessities" or demonstrated "a substantial risk to [plaintiff's] health or safety." Instead of presenting a causal link to prove liability, plaintiff presents only a cause of action, that Lieutenant Word denied him a shower, followed by a legal conclusion, that this action violated the constitution. This is not sufficient – without more – to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

By way of example, plaintiff's single-sentence allegation against Lieutenant Word provides no indication as to when or how often plaintiff made this request during the period he

was in administrative segregation. It is one thing to prove a constitutional violation if Word denied

him a single shower, and another to prove it if Word denied him a series of showers day after day.

Plaintiff's complaint simply does not provide this information. Thus, while plaintiff repeatedly

asserts that he went without a shower for eight days, he never states that Lieutenant Word knew

he had gone without a shower for that whole period.

There are also no facts as to whether Lieutenant Word provided a reason for the refusal.

Providing such facts might have allowed plaintiff to demonstrate Lieutenant Word's deliberate

disregard. Without such allegations, the Court is left to speculate as to what took place. For

example, it is unclear whether Lieutenant Word issued or was following a blanket proscription

against plaintiff being allowed to shower, or if he refused plaintiff's request for some other reason.

Plaintiff seems to intimate that Lieutenant Word, along with Sergeant Wisdom and Officer Frayler,

acted in concert to keep him from showering. Yet plaintiff provides absolutely no facts – or even

conclusions – that this took place. There is also no suggestion of animus on the part of Lieutenant

Word, such that might motivate Word to deny plaintiff a shower for inappropriate reasons. While

plaintiff insists that other inmates in administrative segregation received showers, he makes no

attempt to show that he was similarly situated to those inmates. That is, he has not alleged that he

requested showers at the proper time, that he was not being disruptive, or that he was otherwise

following the rules in administrative segregation.

Finally, the Court notes that plaintiff's own exhibits state that he "refused two showers"

while he was in administrative segregation. Doc. [1-1] at 5. Plaintiff even acknowledges that prison

officials contend that he "resisted," which plaintiff says is not true. Doc. [1-1] at 4. Whether true

or not, this raises the inference that plaintiff was not refused all opportunities to shower, but only

denied showers on certain occasions, an inference that plaintiff does not attempt to rebut by factual

allegations. In any event, plaintiff has not established Lieutenant Word's personal responsibility for violating his constitutional rights.

In his complaint, plaintiff's main point of contention is that he was denied a shower for eight days. This is less time than other inmates have endured without stating a constitutional claim. *See Scott*, 24 Fed. Appx. at 647-48 (determining that there was no denial of plaintiff's "minimal civilized measure of life's necessities" when plaintiff was able to shower only fifteen times in six months, including a twenty-eight-day period without a shower). Furthermore, plaintiff has not alleged that he had no other ways to maintain his hygiene. Most importantly, as laid out above, plaintiff has not shown that Lieutenant Word knew of and disregarded a substantial risk to plaintiff's health or safety.

For all these reasons, plaintiff has failed to state a claim against Lieutenant Word. Therefore, the individual capacity claim against Word must be dismissed.

### I.  Individual Capacity Claim Against Sergeant Wisdom

Plaintiff has sued Sergeant Wisdom in an individual capacity, alleging that she violated his right to due process and equal protection because "she was the sergeant that gave shower[s] for [the] night," but that plaintiff did not receive one. As discussed more fully above, the constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference." *See Saylor*, 812 F.3d at 643. A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644.

In this case, the only allegation directed at Sergeant Wisdom is that she denied him a shower "because she was the sergeant that gave shower[s] for the night." As with Lieutenant Word, this brief assertion is not sufficient to demonstrate that Sergeant Wisdom knew of and disregarded

"a substantial risk to [plaintiff's] health or safety." Similar to Lieutenant Word, plaintiff has presented only a cause of action and a legal conclusion. That is, he has stated that he was denied a shower, and that this denial violated his constitutional rights. There are no facts, however, to support the proposition that Sergeant Wisdom *wrongfully* prevented him from showering, or that this amounted to a constitutional violation. *See Hamilton*, 621 F.3d at 817-18 (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

More specifically, plaintiff's vague, one-sentence contention that Sergeant Wisdom "was the sergeant that gave shower[s] for [the] night" does not indicate when or how often plaintiff requested to take a shower during the period he was in administrative segregation. In point of fact, plaintiff does not even allege that he directly asked Sergeant Wisdom for a shower, stating only that she was the one that "gave" them each night. Thus, it is impossible to know whether Sergeant Wisdom denied him a single shower, whether she denied his requests day after day, or whether she had any personal interaction with him at all. By his own admission, plaintiff was only in administrative segregation from December 2 to December 16, 2019. It is therefore necessary to know what knowledge Sergeant Wisdom had at what time, in order to determine whether she knew of and disregarded a substantial risk to plaintiff's hygienic health. Plaintiff does not provide this information, meaning that despite plaintiff's allegation that he went without a shower for eight days, he has not demonstrated that Sergeant Wisdom was aware of this situation.

There is also no indication whether Sergeant Wisdom – if she did, in fact, directly refuse to allow plaintiff to shower – provided a reason for such refusal. Providing such facts might have allowed plaintiff to demonstrate Sergeant Wisdom's deliberate disregard toward him. Instead,

plaintiff essentially asks the Court to speculate as to what took place. For example, there is no suggestion of animus on Sergeant Wisdom's part, or that she acted in concert with others to inappropriately keep plaintiff from showering. While plaintiff asserts that other inmates, including his cellmate, received showers, he does not provide facts showing that he was similarly-situated to those inmates. For instance, plaintiff does not assert that he requested a shower during the proper times, that he was not being disruptive, and that he was otherwise compliant with the rules while in administrative segregation.

The lack of any contextual facts is glaring in light of plaintiff's own exhibits, one of which states that plaintiff "refused two showers," and another in which he acknowledges that prison officials have accused him of resisting showers while he was in administrative segregation. Doc. [1-1] at 4-5. This raises the inference that plaintiff was not refused all opportunities to shower, but only denied showers on certain occasions. Plaintiff insists this is a "lie," but provides no factual allegations in rebuttal of his own exhibits.

To state a claim against Sergeant Wisdom, plaintiff must show that her actions amounted to deliberate indifference. A prison official is deliberately indifferent if she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644. For all the reasons discussed above, plaintiff has not established the required elements of this claim. Therefore, the individual capacity claim against Sergeant Wisdom must be dismissed.

**J.   Individual Capacity Claim Against Officer Frayler**

Plaintiff has sued Officer Frayler in an individual capacity, accusing Frayler of violating his rights to due process and equal protection. Specifically, he asserts that Frayler was the "officer that denied plaintiff [a] shower but let" his cellmate and others in administrative segregation receive them. The constitutional question with regard to Officer Frayler is whether Frayler "acted

with deliberate indifference." *See Saylor*, 812 F.3d at 643. A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644.

Here, Officer Frayler is accused of denying plaintiff a shower while allowing showers to others. As with Lieutenant Word and Sergeant Wisdom, this brief, unenhanced assertion – without more – is not sufficient to demonstrate that Officer Frayler knew of and disregarded "a substantial risk to [plaintiff's] health or safety." In alleging that he was denied a shower, plaintiff has presented a cause of action. By declaring that his due process and equal protection rights were violated, he has presented a legal conclusion. What he has not done, however, is present facts that actually support these propositions. That is, there are no facts showing that Officer Frayler *wrongfully* denied him a shower, or that this denial amounted to a constitutional violation. *See Hamilton*, 621 F.3d at 817-18 (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

As with defendants Word and Wisdom, the vague allegation against Officer Frayler provides no indication as to when Frayler denied plaintiff a shower, and no indication as to whether this was a single occurrence or happened more than once. Plaintiff repeatedly asserts that he was in administrative segregation from December 2 to December 16, 2019. Thus, it is important to know when Officer Frayler acted, and to have some indication of what knowledge Frayler had – and at what time – in order to determine whether Frayler knew of and disregarded a substantial risk to plaintiff's hygienic health. Plaintiff does not provide this information, meaning that despite his allegation that he went without a shower for eight days, he has not demonstrated that Officer Frayler was aware of this situation.

Plaintiff also does not make any allegations indicating why Officer Frayler denied him a shower, which might have allowed him to demonstrate Frayler's deliberate disregard toward him. For example, there is no suggestion of animus on Officer Frayler's part, or that Frayler acted in concert with others to inappropriately keep plaintiff from showering. While plaintiff asserts that other inmates, including his cellmate, received showers, he does not provide facts showing that he was similarly-situated to those inmates. For instance, plaintiff does not assert that he requested a shower during the proper times, that he was not being disruptive, and that he was otherwise compliant with the rules while in administrative segregation. In other words, plaintiff does not assert that he was denied a shower without any cause, and essentially asks the Court to speculate as to what took place.

As previously noted, the lack of any contextual facts stands out in light of plaintiff's own exhibits, one of which states that plaintiff "refused two showers," and another in which he acknowledges that prison officials have accused him of resisting showers while he was in administrative segregation. Doc. [1-1] at 4-5. This raises the inference that plaintiff was not refused all opportunities to shower, but only denied showers on certain occasions. Plaintiff states that the prison's position is a "lie," but provides no factual allegations in rebuttal of the issues raised by his own exhibits.

In any event, to state a claim against Officer Frayler, plaintiff must show that Frayler's actions amounted to deliberate indifference. A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644. For all the reasons discussed above, plaintiff has not established the required elements of this claim. Therefore, the individual capacity claim against Frayler must be dismissed.

### K.  Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. Doc. [2]. The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### L.  Motion for Preliminary Injunction

Plaintiff has filed a motion construed as a motion for a preliminary injunction. Doc. [3]. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more than a mere possibility." *Id*.  Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*.

Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

Here, plaintiff has not carried his burden of showing that an injunction should be issued. First, with regard to the threat of irreparable harm, the Court notes that plaintiff's complaint concerns an eight-day period in December 2019 when he allegedly did not receive a shower. His allegations therefore comprise a harm that purportedly occurred in the past, rather than an impending harm that necessitates a preventative injunction. There is no indication whatsoever that plaintiff is still being deprived of a shower, or that he was ever again deprived of a shower at any time outside of the time period referenced in the complaint. In short, defendants do not appear to be engaged in any activity that can be enjoined. To the extent that plaintiff seeks release, the Court notes that such a remedy can only be obtained through a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (explaining that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus").

Second, as to the threat of harm to the non-moving party, the Court notes that plaintiff seeks an injunction against prison officials. As stated above, a request for an injunction in a prison setting calls for judicial restraint. This restraint is especially called for in this case, as plaintiff has not made the purpose of his proposed injunction clear.

Finally, and most fundamentally, plaintiff has not demonstrated a likelihood of success on the merits. As discussed at length above, plaintiff has failed to state a claim against any of the defendants named in his complaint. For all of these reasons, plaintiff's motion for a preliminary injunction must be denied.

30

**M. Motion to Supplement Complaint**

Plaintiff has filed a motion to supplement his complaint by adding page 8, which was missing from his form complaint when he originally submitted it. Doc. [4]. The Court finds that the motion should be granted, and page 8 will be treated as part of the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis Doc. [5] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $12.70 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel, Doc. [2], is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for a preliminary injunction, Doc. [3], is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement his complaint, Doc. [4], is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 30th day of November, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE