UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE Z. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 730 MTS |
| | ) | |
| ANN PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the post-dismissal motion to amend filed by plaintiff Clarence Z. Howard. Doc. [14]. For the reasons discussed below, the motion will be denied.

### Background

Plaintiff is a self-represented litigant who is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri. On June 18, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, naming fourteen separate defendants. Doc. [1]. In the complaint, plaintiff alleged that he had been denied showers while in administrative segregation at the Missouri Eastern Correctional Center (MECC).

Along with his complaint, plaintiff filed a motion for leave to proceed in forma pauperis. Doc. [5]. On November 30, 2021, the Court granted the motion and assessed an initial partial filing fee. Doc. [10]. Because he was proceeding in forma pauperis, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, the Court determined that plaintiff had failed to state a claim. Plaintiff's complaint was therefore dismissed without prejudice. Doc. [11].

On December 17, 2021, plaintiff submitted a motion for leave to file an amended complaint. Doc. [14]. He attached a copy of his proposed amended complaint to the motion. Doc.

[14-1]. Plaintiff also filed a second motion for leave to proceed in forma pauperis, and a second motion for appointment of counsel. Docs. [15] and [16]. On February 18, 2022, he submitted a motion for a temporary restraining order. Doc. [18].

### The Proposed Amended Complaint

Plaintiff's proposed amended complaint is brought pursuant to 42 U.S.C. § 1983, and names Missouri Department of Corrections Director Ann Precythe, Deputy Division Director Jason Lewis, Warden Richard Adams, Sergeant Deborah Wisdom, and Officer John Frayler as defendants. Doc. [14-1] at 1. They are all sued in their individual capacities only. *Id.* at 2-4. As in the original, plaintiff's proposed amended complaint concerns his allegations that he was denied showers while in administrative segregation at MECC.

In his "Statement of Claim," plaintiff asserts that he was placed into administrative segregation on December 2, 2019. *Id*. at 6. On that date, plaintiff and his cellmate got ready to take a shower. Officer Frayler then took his cellmate to a shower, but not him. According to plaintiff, Officer Frayler told him: "[You're] not getting a shower so stop asking." Later, when showers were over, plaintiff asked Officer Frayler why he had not been allowed to go. Officer Frayler allegedly told him that he "didn't want to give plaintiff a shower," and to "leave him alone." Plaintiff asserts that shower time every night was at 2:00 a.m., that he was not disruptive, and that he was compliant with the rules in administrative segregation.

Plaintiff states that he was in administrative segregation from December 2, 2019 to December 16, 2019. During this fourteen-day period, plaintiff contends that he requested showers at the proper time, was not disruptive, and complied with the rules. Plaintiff further asserts that his cellmate and other offenders in administrative segregation received showers, but that Officer Frayler denied his requests.

Likewise, regarding Sergeant Wisdom, plaintiff states that Wisdom also denied him showers while he was in administrative segregation. *Id.* at 7. He alleges that from December 2, 2019 to December 16, 2019, he asked Sergeant Wisdom for a shower every night. According to plaintiff, Sergeant Wisdom denied all his requests. At one point, he alleges that she told him: "[I'm] not giving you a shower at all[,] stop asking." At another point, plaintiff asserts that Sergeant Wisdom said: "[You're] not getting a shower…leave me [and] my staff [alone]." As with Officer Frayler, plaintiff states that he was ready at the proper time each night, properly requested a shower, was compliant with rules, and was not disruptive.

On December 7, 2019, plaintiff states that he was seen by a nurse, who asked him why he was not receiving showers. *Id.* at 8. He advised the nurse that Sergeant Wisdom and Officer Frayler were refusing to allow him to shower. The nurse allegedly told plaintiff that she would refer him to the doctor, and email Warden Adams "to let him know how his staff [was] mistreating [him]." Plaintiff states that the nurse also prescribed hydrocortisone for irritated areas of his body. He asserts that not showering allowed "bacteria [and] dirt to settle" on these irritated areas. *Id.* at 6-7.

Plaintiff states that he was seen by Dr. Williams, who gave him a "special order ointment cream" for the irritated areas on his arms and legs. *Id.* at 9. The doctor asked him why he was not receiving showers, and plaintiff told him that Sergeant Wisdom and Officer Frayler were denying his requests. Dr. Williams allegedly told him that "something doesn't sound right here," and that plaintiff should be receiving showers.

On June 9, 2021, plaintiff states that Warden Adams received and answered plaintiff's "IRR/grievance" by "saying staff was not responsible for not allowing" him "to shower for 14 days." *Id.* at 12. He also contends that the nurse emailed Warden Adams asking him to "investigate." However, plaintiff asserts that Warden Adams "never did anything." *Id.* at 13.

With regard to Director Precythe, plaintiff states that Precythe is liable "for all employees' misconduct" due to her position as head of the Department of Corrections. *Id.* at 14. Similarly, he alleges that Deputy Director Lewis is liable for denying his final grievance appeal and for "not finding any wrongdoing" by "MECC staff."

As a result of not receiving showers while in administrative segregation, plaintiff asserts that bacteria and dirt accumulated on sores that were on his arms and legs. *Id.* at 16. This allegedly caused irritation and reopening of the sores, including bleeding. He seeks $3.5 million in actual damages and $20 million in punitive damages. *Id.* at 18.

### Discussion

Plaintiff's complaint was dismissed on November 30, 2021. On December 17, 2021, he filed a motion to amend. For the reasons discussed below, the motion will be denied.

### A.  Post-Dismissal Motions to Amend Are Disfavored

Following dismissal, the right to amend a complaint under Fed. R. Civ. P. 15(a) terminates. *See Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993). Leave to amend may still be granted in the Court's discretion. *Id*. However, in general, post-dismissal motions to amend are disfavored. *See In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 1200, 1208 (8th Cir. 2010).

Here, the Court notes that plaintiff filed a prior lawsuit with similar facts and many of the same defendants on February 23, 2021. *See Howard v. Precythe, et al.*, No. 4:21-cv-233-HEA (E.D. Mo.). In the complaint, plaintiff alleged that he spent eight days in "the hole," from December 2, 2019 to December 10, 2019. During that eight-day period, he alleged that he was denied showers. That case was dismissed without prejudice on May 27, 2021.

Plaintiff then filed this lawsuit on June 18, 2021, once again alleging that he had been denied showers. On November 30, 2021, the Court dismissed the case without prejudice for failure to state a claim.

Now, plaintiff has filed a motion to amend, attaching a proposed amended complaint that once again tries to allege a constitutional violation based on the limited denial of showers while in administrative segregation. As plaintiff has twice before had similar claims dismissed, the Court will decline to grant his post-dismissal motion to amend.

**B.  Allowing Plaintiff to Amend Would Be Futile**

A motion to amend may be dismissed on the basis of futility. *See Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) ("[T]here is no absolute right to amend and a court may deny the motion based upon a finding of…futility"); *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005) ("[T]here is no absolute right to amend and a finding of…futility of the amendment may be grounds to deny a motion to amend"); and *Holloway v. Dobbs*, 715 F.2d 390, 392 (8th Cir. 1983) (stating that district court was justified in denying plaintiff's leave to amend because the "complaint, as amended, could not withstand a motion to dismiss"). Having reviewed the proposed amended complaint, the Court has determined that plaintiff has failed to state a viable constitutional claim against any defendant. Therefore, for this reason as well, the Court will deny the motion to amend.

### i.    Claims Against Director Precythe and Deputy Director Lewis

In the proposed amended complaint, plaintiff has sued both Director Precythe and Deputy Director Lewis in their individual capacities, asserting liability based on their respective positions of authority within the Missouri Department of Corrections.

Vicarious liability is inapplicable in 42 U.S.C. § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Rather, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution").

In this case, plaintiff has not alleged that Director Precythe and Deputy Director Lewis directly participated in any constitutional violation. That is, there are no facts suggesting that Director Precythe and Deputy Director Lewis ordered that plaintiff be denied showers while in administrative segregation at MECC. Instead, plaintiff seems to assert liability based on the respective positions of authority held by Director Precythe and Deputy Director Lewis. However, the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

As noted above, a supervising officer can be held liable if his or her failure to train or supervise caused a constitutional deprivation. The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of his constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). *See also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1)

6

received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts"). The plaintiff must also show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

Here, plaintiff has not presented facts showing that Director Precythe and Deputy Director Lewis had notice that training procedures were inadequate. He also presents no facts demonstrating that his rights were violated due to a failure to train.

Plaintiff also mentions receiving a negative response to a grievance appeal. To the extent that plaintiff is seeking to hold Director Precythe and Deputy Director Lewis responsible based on their answers to his grievances, his claims also fail.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest").

To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that

the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Because a prison grievance procedure does not create a substantive right, it follows that any responses to plaintiff's grievances given by Director Precythe and Deputy Director Lewis do not rise to the level of a constitutional violation.

For all these reasons, plaintiff has failed to adequately state a claim against Director Precythe and Deputy Director Lewis. Therefore, allowing him to amend his complaint with regard to these defendants would be futile.

### ii.      Claim Against Warden Adams

In the proposed amended complaint, plaintiff has sued Warden Adams in his individual capacity, alleging that he "never did anything about his staff" denying him showers. As noted above, to state a supervisory liability claim, plaintiff "must show that the supervising official, through his own individual actions, violated the Constitution." *See Morris*, 954 F.3d at 1060. Due to this requirement, it is well settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011).

In this case, plaintiff does not allege that Warden Adams was directly involved in denying him showers. That is, plaintiff presents no facts showing that Warden Adams ordered him to be kept from showering while in administrative segregation, or was otherwise personally involved in the everyday details of plaintiff's confinement. Further, Plaintiff also cannot demonstrate that Warden Adams failed to train or supervise his subordinates. *See Parrish*, 549 F.3d at 1001. To establish a failure to train, plaintiff "must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the

supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8ᵗʰ Cir. 1996). Plaintiff has made no such factual showing here.

The only indication that Warden Adams had notice of his situation comes from plaintiff's allegation that he told the nurse about being denied showers, and that the nurse said she would email the warden. There are no facts establishing when plaintiff met with the nurse, no facts showing when the nurse sent this email, no facts regarding the contents of the email, and no facts demonstrating if or when the warden received the email. This is not sufficient to establish that Warden Adams "had notice that the training procedures and supervision" was "inadequate and likely to result in a constitutional violation." Certainly, plaintiff has not alleged that any failure to train led to his injury.

Plaintiff also complains that Warden Adams answered his belated grievance by "saying [that] staff was not [responsible] for not allowing" plaintiff to shower. As noted above, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *See Buckley*, 997 F.2d at 495. *See also Lomholt*, 287 F.3d at 684 (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). Because a grievance procedure does not confer on plaintiff a substantive right, Warden Adams's denial of his grievance does not amount to a constitutional violation.

For all these reasons, plaintiff has failed to adequately state a claim against Warden Adams. Therefore, allowing him to amend his complaint with regard to Adams would be futile.

### iii.      Claims Against Sergeant Wisdom and Officer Frayler

In the proposed amended complaint, plaintiff has sued Sergeant Wisdom and Officer Frayler in their individual capacities, alleging that they denied him showers for fourteen days while he was in administrative segregation. He asserts that being denied showers violated his rights under the Eighth Amendment.

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (stating that "[t]he Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes"). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). This means that prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). An inmate's basic human necessities includes the right to adequate personal hygiene. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under 42 U.S.C. § 1983).

In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference." *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir.

10

2016). A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 644.

In determining whether the denial of hygiene violates the Eighth Amendment, courts must look to the length of time over which the deprivation occurred. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (explaining that the long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates). To that end, a short delay in taking a shower does not violate the constitution. *See Scott v. Carpenter*, 24 Fed. Appx. 645, 647-48 (8th Cir. 2001) (determining that there was no denial of plaintiff's "minimal civilized measure of life's necessities" when plaintiff was able to shower only fifteen times in six months, including a twenty-eight-day period without a shower).

Here, plaintiff asserts essentially the same facts against both Sergeant Wisdom and Officer Frayler, accusing them of denying him showers, while also alleging that he asked at the appropriate times and was otherwise compliant with administrative segregation rules. What plaintiff has not done is present facts showing that Wisdom and Frayler knew of and disregarded a substantial risk to his safety. *See Saylor*, 812 F.3d at 644.  In particular, the length of time he went without a shower was only fourteen days, and he does not allege that he had no other hygienic options. Without more, this relatively short period without showers does not establish a substantial risk to his health or safety. *See Scott*, 24 Fed. Appx. at 647-48 (determining there was no denial of plaintiff's "minimal civilized measure of life's necessities" even though plaintiff went twenty-eight days without a shower).

The Court also notes that exhibits attached to plaintiff's original complaint contradict his assertions in the proposed amended complaint. Specifically, one exhibit provides that plaintiff

11

"refused two showers," and another acknowledges that prison officials have accused plaintiff of resisting showers while he was in administrative segregation. Doc. [1-1] at 4-5.

For all these reasons, plaintiff has failed to adequately state a claim against Sergeant Wisdom and Officer Frayler. Therefore, allowing him to amend his complaint with regard to these defendants would be futile.

**C.  Second Motion for Leave to Proceed in Forma Pauperis**

Plaintiff has filed a second motion for leave to proceed in forma pauperis. Doc. [15]. The motion will be denied as moot as the Court has already granted plaintiff's prior motion and assessed an initial partial filing fee.

**D.  Second Motion for Appointment of Counsel**

Plaintiff has also filed a second motion for appointment of counsel. Doc. [16]. The motion will be denied as moot as the case is closed and the Court is denying plaintiff's motion for leave to file a post-dismissal motion to amend.

**E.  Motion for Temporary Restraining Order**

Plaintiff has filed a motion for a temporary restraining order. Doc. [18]. Preliminary injunctive relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant preliminary injunctive relief, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to

determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). These same factors also apply to a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to a motion for a temporary restraining order).

Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019). He has not carried that burden here. First, he has not shown the threat of irreparable harm. Instead of providing specific facts regarding this element, plaintiff has included a handwritten draft order to restrain "the defendants" from vaguely-described actions such as "outrageous harassment [and] cell searches," and to keep him from being placed "under investigation for no reason." This is insufficient to demonstrate the necessity of injunctive relief to keep him from harm. For the same reasons, plaintiff has not demonstrated a likelihood of success on the merits. Therefore, the motion must be denied.

Even if plaintiff had presented more detailed allegations, the Court notes that injunctive relief would not be appropriate because the substance of the motion is not related to the claims in his proposed amended complaint. That is, plaintiff's proposed amended complaint concerns the denial of showers in 2019, while the instant motion seeks relief from unspecified harassment occurring at the present time. For this reason as well, the Court cannot grant the motion. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); and *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he

challenged in his complaint").

For all the reasons discussed above, plaintiff's motion for a temporary restraining order must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file a post-dismissal amended complaint, Doc. [14], is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's second motion for leave to proceed in forma pauperis, Doc. [15], is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's second motion for appointment of counsel, Doc. [16], is **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that plaintiff's motion for a temporary restraining order, Doc. [18], is **DENIED**.

Dated this 7th day of March, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE